976 So.2d 769 (2008)
Carol SCOTT
v.
Milton D. STOKES, Larry Shields and Lockheed Martin Manned Space Systems Corporation.
No. 2007-CA-0887.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 2008.
*770 Churita H. Hansell, The Law Office of Churita H. Hansell, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
Michael T. Tusa, Jr., Andre' Lagarde, Metairie, LA, for Defendant/Appellee, Lockheed Martin Manned Space Corporation.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
The plaintiffs appeal a summary judgment dismissing the plaintiffs' disability discrimination claim. After de novo review of the record in light of the arguments of the parties and relevant authority, we find that the defendants were entitled to summary judgment on this claim and confirm the judgment of the trial court.
Relevant Facts and Procedural History
In March 1988, Carol Scott was employed by the Lockheed Martin ("Lockheed") as a Security Inspector. In November 1995, Ms. Scott filed suit against her employer, her employer's liability insurer, and two supervisors (Milton Stokes and Larry Shields), alleging sexual harassment and racial discrimination. In 1997, after fainting at work, Ms. Scott was diagnosed with a seizure disorder. In April 1998, after several more fainting episodes, Ms. Scott was placed on medical leave to undergo medical testing.
In April 1999, by consent judgment, Ms. Scott's claims against her supervisors were dismissed except for the claim against Mr. Stokes for intentional infliction of emotional distress. In June 1999, Ms. Scott returned to work but, based on anger management issues, was restricted from carrying a weapon. In April 2000, Ms. Scott amended her petition to include a claim of disability discrimination, Ms. Scott was terminated for insubordination in July 2000 and, shortly thereafter, amended her complaint to allege that her termination was a result of retaliation and/or discrimination.
In October 2001, Ms. Scott died and, in August 2002, family members were substituted as party-plaintiffs. In October 2002, the plaintiffs filed a third amended petition, alleging wrongful death in addition to the pending claims for sexual harassment, intentional infliction of emotional distress, disability discrimination, and retaliation.
In March 2006, Lockheed and Milton Stokes filed a joint motion for summary judgment. A motion hearing was held in *771 March 2006 and, shortly thereafter (July 20, 2006), the trial court granted summary judgment in favor of Mr. Stokes, dismissing all claims against him, and granted in part and denied summary judgment in favor of Lockheed, dismissing with prejudice the claims for sexual harassment, intentional infliction of emotional distress, and disability discrimination but denying the defendants' motion for summary judgment on the retaliation claim. The plaintiffs appeal only the dismissal of the disability discrimination claim.
Summary Judgment
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(B). In 1996, this article was amended to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La. Code Civ. Proc. art. 966(A)(2). Pursuant to La.Code Civ. Proc. art. 966(C)(2), the burden of proof in summary judgment proceedings is as follows:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Thus, similar to the federal standard articulated in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the burden of producing evidence at the hearing on the motion for summary judgment is first placed on the mover (normally, as in this case, the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually, as in this case, the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates an ability to meet the burden of proof at trial. See MARAIST AND LEMMON, 1 LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Accordingly, once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hardy v. Bowie, 1998-2821 (La.9/8/99), 744 So.2d 606.
Louisiana's Anti-Discrimination Law
The State of Louisiana's anti-discrimination legislation is contained in three distinct titles of the Revised Statutes: Titles 23, 46 and 51.
La.Rev.Stat. 23:323 states:
A. No otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment
B. An employer, labor organization, or employment agency shall not engage in any of the following practices:
(1) Fail or refuse to hire, promote, or reasonably accommodate an otherwise *772 qualified disabled person on the basis of a disability, when it is unrelated to the individual's ability, with reasonable accommodation, to perform the duties of a particular job or position.
(2) Discharge or otherwise discriminate against an otherwise qualified disabled person with respect to compensation or the terms, conditions, or privileges of employment on the basis of a disability when it is unrelated to the individual's ability to perform the duties of a particular job or position.
(3) Limit, segregate, or classify an otherwise qualified disabled person in a way in which deprives the individual of employment opportunities or otherwise adversely affects the status of the individual on the basis of a disability when it is unrelated to the individual's ability to perform the duties of a particular job or position.
* * *
In addition, La.Rev.Stat. 23:322 states in pertinent part:
For the purposes of this Part, the following terms shall have the following meanings ascribed to them:
* * *
(3) "Disabled person" means any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment.
(4) "Discrimination" shall include unreasonable segregation or separation.
(5) "Essential functions" means the fundamental job duties of the employment position the disabled person holds or desires. "Essential functions" does not include the marginal functions of the position.
(6) "Impairment" means retardation, any physical or physiological disorder or condition, or prior mental disorder or condition . . .
(7) "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
(8) "Otherwise qualified disabled person" means a disabled person who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds or desires.
(9) "Reasonable accommodation" means an adjustment or modification to a known physical limitation of an otherwise qualified disabled person which would not impose an undue hardship on the employer. This shall not require an employer to spend more for architectural modifications than that amount now allowed as a federal tax deduction. However, "reasonable accommodation" shall not be construed to impose on any private sector employer, unless required by law or under any contract with a federal, state, or local promotion of a disabled person. Undue hardship is determined on a case-by-case basis taking into account all of the following:
(a) The employee or applicant for which accommodation is to be made.
(b) The specific disability of employee or applicant.
(c) The essential job duties of the position.
(d) The working environment.
Next, La.Rev.Stat. 46:2251. et seq., entitled Civil Rights for Handicapped Persons, prohibits disability discrimination and preserves all remedies available under the law to a handicapped person who suffers discrimination. La. 46:2253 states in pertinent part:

*773 (1) "Handicapped person" means any person who has an impairment which substantially limits one or more life activities or (a) has a record of such an impairment or (b) is regarded as having such an impairment.
(2) "Impairment" means retardation; any physical or physiological disorder or condition, or prior mental disorder or condition, but does not include chronic alcoholism or any other form of active drug addiction; any cosmetic disfigurement; or an anatomical loss of body systems.
(3) "Major life activities" mean functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working.
Finally, La.Rev.Stat. 51:2231, et seq., prohibits disability discrimination in connection with employment and public accommodations. La.Rev.Stat. 51:2232(11) defines "disability" using the same language as the federal statute commonly known as the Americans with Disabilities Act.[1]
Thus, the Louisiana statutory framework allows a person to be classified as handicapped only if he/she is, in fact, handicapped or "regarded as" handicapped as statutorily defined. Clearly, if a person is not found to have a "known physical limitation," then they are not owed a "reasonable accommodation." La.Rev.Stat. 23:322(9). Concomitantly, an employer need not make accommodations for a physical limitation that does not exist and, likewise, an employee cannot prove discrimination or adverse action by a failure to accommodate a non-existent physical limitation. See La.Rev.Stat. 23:323. Thus, "the protections afforded by statutes prohibiting disability discrimination are not intended for those who may have only a slight or marginal impairment." Beaumont v. Exxon Corp., 2002-2322, p. 10 (La.App. 4 Cir. 3/10/04), 868 So.2d 976, 982, writ denied, XXXX-XXXX (La.9/3/04), 882 So.2d 609. As previously noted by this court, the state anti-discrimination statutes require a case-by-case analysis to avoid an overly broad application to anyone who is less than a perfect physical specimen and "the protections afforded by the statutes are not intended for those who may have only a slight or marginal impairment." Beaumont, supra.; see also, Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("merely having an impairment does not make one disabled" for purposes of the disability discrimination laws).
Discussion
On motion for summary judgment, Lockheed contends that they are entitled to summary judgment on the disability discrimination claim because there is no evidence that Ms. Scott was disabled under the law and, in any event, because Lockheed articulated a legitimate, non-discriminatory basis for her termination. In support, Lockheed submits Ms. Scott's deposition testimony wherein she states that the only condition she considered a disability was a leg injury suffered in high school track which limited her only from running track or wearing a certain type of work shoe. Lockheed also submits numerous documents and affidavits to support the contention that Ms. Scott's employment was terminated for insubordination, a violation of company policy.
*774 Accordingly once Lockheed met its burden on summary judgment in pointing out the lack of factual support for an intrinsic element of the disability discrimination claim, i.e., there is no evidence that Ms. Scott was disabled as defined by the pertinent statutes, the burden shifted to the plaintiffs to come forward with evidence (affidavits or discovery responses) demonstrating that they will be able to meet the burden of proof at trial to establish the essential elements of the disability discrimination claim. This the plaintiffs have failed to do. Rather, the plaintiffs argue only that the trial court judgment was erroneous because there is a question of fact as to "whether Ms. Scott was a direct threat to herself and others and whether she was regarded or perceived as being disabled." The plaintiffs contend that because Ms. Scott was restricted from carrying a weapon, in the context of being a security guard she was perceived as disabled.
The plaintiffs also argue that the trial court erred because Lockheed sent Ms. Scott to Dr. Harminder Mallik of Tulane University in June 1998 for an assessment as to whether it was appropriate for Ms. Scott to carry a deadly weapon only after her treating physicians opined that she could return to work with no restrictions after undergoing stress and anger management treatment and that Dr. Mallik's report (contrary to that of her treating physician's) that "given Ms. Scott's history of sudden outbursts of temper without any provocation there is a substantial risk associated with her having access to a loaded weapon" was based on biased and untrue statements made by Ms. Scott's supervisors regarding her relationships with other employees. In support, the plaintiffs submit Ms. Scott's medical reports indicating that her treating physicians did, in fact, clear her to return to work without restrictions.
The plaintiffs' argument, while novel, is flawed. The threshold issue is whether Ms. Scott suffered from or was perceived to suffer from a statutorily defined disability. Clearly, carrying a weapon is not a statutorily defined major life activity under Louisiana law and, thus, the plaintiffs' claim is not covered under the statutes relevant to a disability discrimination claim. To the extent that the plaintiffs seek to suggest that Lockheed manipulated the doctor's report in order to support a restriction on Ms. Scott's ability to carry a weapon and constructively terminate her from a higher paid position as an armed security guard, their argument relates to the pending retaliation claim. Because the plaintiff was not disabled under the relevant statutes, we pretermit a discussion of Lockheed's articulated basis for terminating Ms. Scott's employment.
Conclusion
After de novo review, we find that the defendants are entitled to summary judgment on the plaintiff's disability discrimination claim. The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] 42 U.S.C. 12101 states: "The term "disability" means, with respect to an individual-(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."