THE UPPER ROOM BIBLE     *       NO. 2023-CA-0417
CHURCH, INC. D/B/A THE
UPPERROOM BIBLE          *
CHURCH, PASTOR HERBERT       COURT OF APPEAL
H. ROWE, JR. AND HIS WIFE    *
DR. CAROL G. ROWE           FOURTH CIRCUIT
                       *
VERSUS                   STATE OF LOUISIANA
             * * * * * * *
BANKPLUS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-05082, DIVISION "B"
Honorable Marissa Hutabarat,
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

Richard E. Anderson
ATTORNEY AT LAW
2901 Ridgelake Drive
Suite 105
Metairie, LA 70002


       COUNSEL FOR PLAINTIFFS/APPELLANTS


Mark C. Landry
Jeffery Toepfer
NEWMAN MATHIS BRADY & SPEDALE, PLC
3501 N. Causeway Blvd.
Suite 300
Metairie, LA 70002


       COUNSEL FOR DEFENDANT/APPELLEE

                                  **AFFIRMED**
                          **DECEMBER 7, 2023**

RLB
PAB
TGC

Appellants in this case seek a reversal of the trial court's judgment granting appellee's exception of *res judicata*. The current action arises from a commercial loan by appellee, First Bank and Trust ("the Bank") to the appellant church, "The Upper Room Bible Church, Inc." ("Upper Room"). Upper Room defaulted on the loan and the Bank seized and sold property that was mortgaged as security. Upper Room has filed the instant lawsuit claiming that the Bank fraudulently and unfairly used its underwriting and lending practices to deprive the church of its property. The Bank filed an exception of *res judicata* arguing that whatever claims the church may have had should have been asserted in a bankruptcy proceeding the church filed to stop the foreclosure on its property. For the reasons set forth below, we affirm the trial court's judgment.

The petition in this case was filed on June 6, 2022. The plaintiffs in the case are Upper Room, Herbert Rowe (its pastor) and his wife. The petition prays for the nullification of the Bank's foreclosure sale and the return of the property to the church. The causes of action alleged are fraud, intentional infliction of emotional distress, and violations of the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA").

1

*Factual Background*

As stated above, Upper Room's claim arises from a loan originated by the Bank.[1] A proper understanding of this claim requires a review of the history of that loan and its ultimate disposition.

*The Loan.*

The Bank loaned Upper Room $2,936,961.00. The total indebtedness is represented by three promissory notes that are designated as Notes A, B, and C in this case. The notes are secured by mortgages on five parcels of property. Three of the parcels were in Orleans Parish and the other two were in St. Tammany Parish. All the notes were executed on April 30, 2013. The debt represented by each note was amortized over a twenty year period and provided that Notes A, B, and C have 35, 23, and 35 monthly payments, respectively, and a single balloon payment for the remaining amount of principal and interest on the final month.[2]

Upon Upper Room's default in June 2016, the parties attempted to work out an amicable repayment plan to refinance the notes. When that failed, the Bank initiated executory proceedings in St. Tammany Parish for the immovable property subject to the notes. The property securing the notes in St. Tammany Parish was set for a sheriff's sale by auction. Upper Room attempted to stop the sale by injunction. The injunction was denied. Upper Room then filed for bankruptcy protection. The sheriff's sale was prevented by the automatic stay in bankruptcy.

---

[1] First Bank originated the loan to Upper Room. However, by the time this suit was filed, First Bank had been subsumed into BankPlus in a merger of the two banks. To avoid confusion, the defendants in this matter are referred to as the Bank.

[2] These Balloon amounts were as follows
     Note A: $759,320.54
     Note B: $715,516.88
     Note C: $1,239,327.93

***The Bankruptcy.***

In the course of the bankruptcy proceeding, Upper Room proposed multiple plans of reorganization. The third of the proposed plans was accepted by the Bank, the trustee and the court. The plan called for a consolidation of the payments required by Notes A, B, and C into a single payment that is defined by the plan. The operative portion is as follows:

> The aggregate amount of First Bank & Trust's Class 1 Claim shall be fixed and Allowed in the amount of $3,180,225.51, plus interest at the rate of 21% per annum from the Petition Date until the Confirmation Date, attorney's fees and costs as may be allowed by the Bankruptcy Court. On the Confirmation Date, the unpaid balance of First Bank & Trust's Class 1 Claim shall accrue interest at the rate of 5.5% per annum until paid in full.
>
> Most significantly, the plan also provided that the three notes and the

mortgage would remain valid and binding obligations of Upper Room, until the amounts due to the Bank were paid. Under the plan, the debt was amortized over 20 years once again with 35 monthly payments and a balloon payment for the balance that would be due on or before June 1, 2020. The Bank specifically reserved its right to seize and sell the property at a foreclosure sale if Upper Room did not meet its revised commitment.

***Default on Plan of Reorganization.***

Upper Room defaulted on its monthly repayment obligations (as revised) on June 12, 2019. In response, the Bank took the legal steps necessary to have the properties seized and sold in sheriff's auctions in both St. Tammany and Orleans Parishes. At both auctions, the Bank was the highest bidder and became the owner of the properties.

***Upper Room Sues the Bank.***

As outlined above, Upper Room filed the instant case on June 6, 2022. In the action presently before this court, Upper Room alleges that the Bank acted unlawfully by agreeing to the bankruptcy plan of reorganization that Upper Room proposed and the court approved. Upper Room alleges that the Bank did not exercise due diligence and did not properly underwrite Upper Room's credit to determine whether it had sufficient income to repay the aggregated debt. The petition does not charge the Bank with misconduct regarding the original extension of credit. Instead it claims that the plan of reorganization constitutes a new promissory note that it refers to as "Note D." Stated differently and more simply, Upper Room's lawsuit asserts that the Bank should not have accepted the bankruptcy plan because it knew or should have known that Upper Room did not have the ability to repay the debt. It is important to note here that a search of the entire plan of reorganization would not reveal any mention of a fourth "Note D" nor would it reveal the execution of any instrument that would increase the amount of indebtedness over and above that which had accumulated under the terms and conditions of the notes Upper Room signed in 2013.

***The Exception of No Cause of Action and Res Judicata.***

BankPlus filed exceptions of no cause of action and *res judicata*. *Res Judicata* is defined under L.A. R.S. 13:4231, which provides that:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

4

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The Bank argues that the bankruptcy plan and the order confirming the plan have res judicata effect, and the claims that Upper Room raised in its petition in the case at bar all stemmed from issues and facts that it should have asserted in the plan confirmation process. The Bank argues further that Upper Room's claims should have been raised in opposition to the seizures and sales but were not.

### *Standard of Review.*

An appellate court should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. *Arceneaux v. Dominigue*, 365 So.2d 1330, 1333 (La.1978). However, if a court finds that the trial court committed a reversible error of law or manifest error of fact in granting a preemptory exception, the court of appeal review the record de novo and render a judgment on the merits. *Oubre v. Eslaih*, 2003-1133, p. 9 (La. 2/6/04), 869 So.2d 71, 76-77; *Beaumont v. Exxon Corp.*, 2002-2322, p. 7 (La.App. 4 Cir. 3/10/04), 868 So.2d 976, 980.

### *Conclusion*

The trial court properly found that the alleged "Note D" that was the lynchpin of Upper Room's case was a fiction that could not support any of its legal claims. Lacking a proper foundation, Upper Room's claims fail to state a cause of action. Further, even if such a cause of action existed, it would be precluded by the doctrine of *res judicata*. For these reasons, we affirm the exception granted by the trial court.

**AFFIRMED.**